Deborah **BOLLINGER** and Bryan Bubnick, individually and on behalf of all others similarly situated, Plaintiffs,

v.

**RESIDENTIAL CAPITAL, LLC; Gmac Mortgage, LLC; and Ally Financial, Inc., Defendants.**

Case No. C10–01123–RSM.

United States District Court,
W.D. Washington,
at Seattle.

May 30, 2012.

Beth E. Terrell, Terrell Marshall Daudt & Willie PLLC, Seattle, WA, Matthew C. Helland, Robert L. Schug, Nichols Kaster, LLP, San Francisco, CA, Paul J. Lukas, Nichols Kaster & Anderson, Minneapolis, MN, for Plaintiffs.

David R. Golder, William J. Anthony, Jackson Lewis, Hartford, CT, Paul Decamp, Jackson & Lewis LLP, Reston, VA, Peter H. Nohle, Jackson Lewis, Seattle, WA, for Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

RICARDO S. MARTINEZ, District Judge.

## I. INTRODUCTION

This matter comes before the Court upon the parties' cross-motions for partial summary judgment. Dkt. # 125, 137. For the following reasons, Plaintiffs' motion is GRANTED and Defendants' motion is DENIED.

## II. BACKGROUND

### A. Facts

#### 1. *Mortgage underwriting*

Plaintiffs worked as underwriters for Defendants' residential mortgage business. Dkt. # 114 ¶ 2; Dkt. # 125, Ex. N 28. Plaintiffs' main duties were to confirm that mortgage applications met Defendants' guidelines and secondary market guidelines. Dkt. # 125 Ex. O 15.

Plaintiffs' duties were, as one of Defendants' officers put it, "functional as opposed to conceptual." Dkt. # 124, Ex. 2 at 5878. Loan officers would begin the mortgage application process by advising customers about the most suitable mortgage products and collecting application data. *Id.* The data collected by the loan officers would pass through an automated review

system that determined whether the customers met Defendants' guidelines for the mortgage product in question. *Id.* The automated system recommended whether to approve an application. *Id.* After the automated review, Plaintiffs verified the accuracy of the data in the application and reviewed the application for compliance with guidelines that the automated system could not process. *Id.* Plaintiffs then gave final approval for the mortgage. Dkt. # 124, Ex. 3 at 2.

Plaintiffs did not advise or counsel applicants about suitable mortgage products. Dkt. # 124, Ex. 2 at 5. Plaintiffs could recommend approval of applications that did not meet guidelines, but in such cases the final approval decision went to another department. Dkt. # 124, Ex. 3 at 2; Dkt. # 131 ¶ 7. Plaintiffs could also suggest alternative products for which customers might qualify but had to get loan officer approval for such variances. Dkt. # 133, Ex. 10 at 56–57, 74. In addition, Plaintiffs had some latitude in calculating items such as income and assets, but their results had to match what Defendants' investors would calculate. Dkt. # 124, Ex. 3 at 2; Dkt. # 133, Ex. 10 at 50.

Defendants evaluated Plaintiffs on the basis of productivity. Plaintiffs were expected to review a certain number of loan applications per day and received incentive bonuses tied to the total value of reviewed loans. Dkt. # 124, Ex. 2 at 5878; Dkt. # 125, Ex. O 77. Plaintiffs were also evaluated based on how many errors they made in applying Defendants' guidelines. Dkt. # 125, Ex. O at 66–67.

2. *FLSA overtime exemption and internal audits*

Until 2010, Defendants classified Plaintiffs as "administrative" workers who were exempt from the overtime pay requirements of the Fair Labor Standards Act ("FLSA"). Dkt. # 114 ¶ 30; 29 U.S.C. §§ 207(a), 213(a). This classification also exempted Plaintiffs from overtime pay under the Washington Minimum Wage Act ("WMWA,") which mirrors the FLSA's overtime and exemption provisions. *See* Wash. Rev.Code §§ 49.46.010(3)(c), 49.46.130(1); *Palazzolo–Robinson v. Sharis Mgmt. Corp.*, 68 F.Supp.2d 1186, 1189 n. 3 (W.D.Wash.1999). Plaintiffs regularly worked more than forty hours a week and would have merited overtime pay if classified as non-exempt. Dkt. # 114 ¶ 27; 29 U.S.C. § 207(a); Wash. Rev.Code § 49.46.130(1).

In 2006, Defendants hired the law firm Morgan, Lewis & Bockius to audit Defendants' decision to classify Plaintiffs as exempt administrative workers. Dkt. # 124, Ex. 9. Morgan Lewis ultimately advised Defendants that the decision was proper. *Id.* During the audit, Morgan Lewis consulted guidance issued by the Administrator of the Wage and Hour Division of the Department of Labor. The most important guidance was a 2006 opinion letter concerning mortgage loan officers—which was rescinded in March 2010—and a published illustration of how exemption principles applied to financial services industry workers. Dkt. # 125, Ex. K; *Id.* Ex. Q 26; Dkt. # 129, Ex. 7 at 30–31; Dkt. 141, Ex. 2.

In summer 2008, Morgan Lewis learned of *Whalen v. J.P. Morgan Chase & Co.*, 569 F.Supp.2d 327 (W.D.N.Y.2008), which held that mortgage underwriters fell under the FLSA's administrative exemption. Morgan Lewis reviewed *Whalen* and concluded that it supported Defendants' decision to classify Plaintiffs as exempt. Dkt. # 130 ¶ 3.

Despite Morgan Lewis' advice, Defendants' officers were concerned about the decision to classify Plaintiffs as exempt. Internal emails from May 2009 show that the issue had been "a source of debate for

some time." Dkt. # 143, Ex. S 4077. The officers were particularly concerned because most of Defendants' competitors were paying their underwriters overtime. *Id.* at 4075.

A few months later, Defendants hired attorney Maxine Goodman to perform a new audit of the exemption decision. Dkt. # 125, Ex. P 12–13. Like Morgan Lewis, Goodman concluded that the 2006 opinion letter on loan officers, published guidance on financial services industry employees, and *Whalen* supported Defendants' exemption decision. Dkt. # 133, Ex. 9 at 14–15, 19–23.

In November 2009, the Second Circuit issued *Davis v. J.P. Morgan Chase & Co.,* 587 F.3d 529 (2d Cir.2009), which reversed *Whalen* and held that underwriters did not qualify for the FLSA's administrative exemption. Goodman reviewed the *Davis* decision and concluded that underwriter duties described in that case were analogous to Plaintiffs' duties. Dkt. # 125, Ex. P 40, 42. In January 2010, she recommended that Defendants reclassify Plaintiffs as nonexempt. Dkt. # 124, Ex. 2 at 5876. Defendants did so about a month later. Dkt. # 124 at 5.

### B. Litigation

Plaintiffs filed this class action against Defendants, alleging various violations of federal and state labor laws. Dkt. # 114 ¶ 1. In the claims relevant to this Order, Plaintiffs allege Defendants misclassified Plaintiffs as exempt from FLSA and WMWA overtime pay requirements. *Id.* ¶¶ 30, 53, 61. The Court has granted conditional class certification. Dkt. # 58.

Plaintiffs have moved for partial summary judgment, asking the Court to determine as a matter of law that (1) Plaintiffs did not fall under the FLSA's administrative employee exemption and (2) Defendants may not invoke the Portal–to–Portal Act's "good faith reliance" defense to liability. Dkt. # 129. Defendants have also moved for summary judgment, asking the Court to determine as a matter of law that (1) Defendants are entitled to the Portal–to–Portal Act's good faith reliance defense; (2) holding Defendants liable under the FLSA and WMWA would be an impermissible retroactive application of new law; (3) Defendants are entitled to the Portal–to–Portal Act's "limited good faith" defense to liquidated damages; and (4) the FLSA's standard two-year statute of limitations applies because Defendants did not willfully violate the FLSA. Dkt. # 137.

### III. LEGAL FRAMEWORK

### A. Summary judgment standard

The Court will grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are those which might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court does not weigh evidence to determine the truth of the matter but instead "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.,* 41 F.3d 547, 549 (9th Cir.1994).

The Court draws all reasonable inferences in favor of the non-moving party. *Mattos v. Agarano,* 661 F.3d 433, 439 (9th Cir.2011) (en banc). Nonetheless, the non-moving party must make a "sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The mere existence of a scintilla of evidence" is not enough. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## B. Overtime requirement

The FLSA generally requires employers to pay their employees time and a half for work exceeding forty hours per week. 29 U.S.C. § 207(a)(1). Although Plaintiffs often worked more than forty hours per week, Defendants did not pay them overtime until early 2010. Dkt. # 114 ¶¶ 27, 30. The parties' cross-motions cover two types of issues: (1) whether Defendants are liable for failing to pay overtime and, if so, (2) whether such liability is limited. The Court addresses each category in turn.

## IV. LIABILITY FOR FAILURE TO PAY OVERTIME

### A. FLSA's administrative employee exemption

■ Plaintiffs seek summary judgment on Defendants' affirmative defense invoking the FLSA's administrative employee exemption. Dkt. # 124 at 10. The FLSA exempts several categories of employees from the overtime pay requirement, including "any employee employed in a bona fide ... administrative ... capacity." 29 U.S.C. § 213(a)(1). Defendants have the burden of proving this exemption applies, and it is construed narrowly against them. *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124–25 (9th Cir.2002).

The FLSA does not define "employed in a bona fide ... administrative ... capacity," instead delegating that task to the Secretary of Labor. 29 U.S.C. § 213(a)(1). The Secretary has promulgated a three-pronged definition of the administrative exemption. Under this definition, administrative employees are workers (1) who are "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week"; (2) "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) "[w]hose

primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

The parties focus exclusively on the "duty" prong. The Court must determine whether, as a matter of law, Plaintiffs' "primary duty [was] the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.200(a)(2).

#### 1. *Administrative/production dichotomy*

Plaintiffs contend the so-called "administrative/production dichotomy" demonstrates that Plaintiffs did not perform exempt administrative duties. Dkt. # 124 at 12. The dichotomy is an illustration issued by the Wage and Hour Division Administrator to help explain what constitutes exempt administrative work. The guidance begins by explaining the general nature of exempt administrative work: "To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers." 29 C.F.R. § 541.201(a). Then, by way of example, the guidance distinguishes between "work directly related to assisting with the running or servicing of the business"—which is administrative—and "working on a manufacturing production line"—which is not. *Id.*

Plaintiffs ask too much of the administrative/production dichotomy. Applying the dichotomy requires a conservative approach in general and particular care where there is no tangible good. Before 2004, the regulation in question distinguished broadly between administrative and "production" work. 29 C.F.R.

§ 541.201(a) (2003). But now the "production" example has a narrower, more traditional focus: "working on a manufacturing production line." *Id.* (current version). In limiting the administrative/production dichotomy to the concept of manufacturing, the Administrator explained that "the dichotomy has [n]ever been [n]or should be a dispositive test for exemption." 69 Fed. Reg. 22122, 22141 (Apr. 23, 2004). This view is consistent with that of the Ninth Circuit, which has explained that the dichotomy is merely one attempt "to clarify the elusive meaning of the term 'administration.'" *Bothell,* 299 F.3d at 1126. "Only when work falls squarely on the production side of the line has the administration/production dichotomy been determinative." *Id.* at 1127 (quoting *Reich v. State of New York,* 3 F.3d 581, 587–88 (2d Cir.1993) (internal punctuation omitted)).

With this framework in mind, the Court cannot make a definitive ruling on the basis of the administrative/production dichotomy. The dichotomy's focus on a traditional manufacturing line makes it "not terribly useful" when applied to service workers. *Roe–Midgett v. CC Servs., Inc.,* 512 F.3d 865, 872 (7th Cir.2008). Here, Plaintiffs were "neither working on a manufacturing line nor 'producing' anything in the literal sense." *Id.* at 873. Before the Administrator's 2004 revisions, this may not have been a major stumbling block. *See Bratt v. County of Los Angeles,* 912 F.2d 1066, 1070 (9th Cir.1990). But since 2004, the clear trend is to move away from contrived analogies between services and production. *See In re Farmers Ins. Exch.,* 481 F.3d 1119, 1132 (9th Cir.2007).

Plaintiffs urge the Court to adopt the administrative/production dichotomy analysis used by the Second Circuit in *Davis.* Dkt. # 124 at 15. *Davis* held that mortgage underwriting was production work under the dichotomy. 587 F.3d at 535. The Second Circuit found certain facts about the underwriters' work—for example, the fact that the underwriters were evaluated and paid on the basis of productivity—particularly important in this analysis. *See id.* at 534–35. As Plaintiffs note, those facts are present here as well. Dkt. # 124, Ex. 2 at 5878; Dkt. # 125, Ex. O 77.

It is not clear that *Davis* says as much as Plaintiffs claim it does. Although *Davis* phrased its holding in terms of the administrative/production dichotomy, it explicitly compared its reasoning to the Ninth Circuit approach of treating the dichotomy as a mere tool in a larger inquiry. *See Davis,* 587 F.3d at 535–37; *Bothell,* 299 F.3d at 1126. But to the extent *Davis* found the dichotomy dispositive, its analysis was flawed. *Davis* relied on the pre–2004 example of "production," which had no qualifications. *See* 587 F.3d at 532 n. 2. The current example equates production with physical manufacturing, and its usefulness is limited accordingly. *See* 29 C.F.R. § 541.201(a); 69 Fed.Reg. at 22141.

### 2. *Other illustrations of administrative work*

Plaintiffs argue that even if the administrative/production dichotomy does not end the inquiry, Defendants still cannot show Plaintiffs' duties were administrative as required by the exemption. Dkt. # 124 at 16–17. They argue that the Administrator's other illustrations of administrative work show Plaintiffs' duties did not fall under the administrative exemption's duty prong.

The Court agrees. Before explaining why, however, the Court must address Defendants' argument that the Court cannot reach this question. Defendants argue that once the Court has decided not to apply the administrative/production dichotomy, it must analyze the second and third prongs of the administrative exemption together. Dkt. # 137 at 9. Since the parties

have not briefed whether Plaintiffs' "primary duty include[d] the exercise of discretion and independent judgment with respect to matters of significance," the Court must wait for a later motion for summary judgment to decide whether the exemption applies. *See id.;* 29 C.F.R. § 541.200(a)(3).

This argument is unsupported and makes no sense. The administrative/production dichotomy is not the only way to determine whether Plaintiffs' duties were administrative. *See Bothell,* 299 F.3d at 1126. The Court is free to approach the question of what is administrative work from a different angle, and it will do so.

As noted above, one broad definition of administrative work is work "directly related to the management or general business operations of the employer." 29 C.F.R. § 541.201(a). The Administrator further defines such work as "assisting with the running or servicing of the business." *Id.* The "essence" of this definition is "the running of the business, and not merely … the day-to-day carrying out of its affairs." *Bratt,* 912 F.2d at 1070 (internal quotation marks omitted). As the Administrator has explained:

> [w]ork directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b).

This list distinguishes between work that any employer needs performed—such as accounting, human resources, and regulatory compliance—and work that is particular to an employer's industry. *See Bratt,* 912 F.2d at 1070. The former is part and parcel of running a business and therefore exempt administrative work. The latter is not.

■ Under this framework, Plaintiffs' work was not administrative. The work Plaintiffs did—collecting customers' financial data and measuring that data against Defendants' lending guidelines—was necessary because Defendants provided mortgages, not because Defendants were in business generally.

Administrative guidance on how to apply this analysis to customer service and the financial services industry confirms that Plaintiffs did not have administrative duties. "[W]ork directly related to the management or general business operations of the employer's customers"—not just the employer—may be exempt. 29 C.F.R. § 541.201(c). In this context, the major example of exempt administrative work is high-level advice and analysis. "Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt." *Id.*

Consistent with this general principle, the Administrator's illustration of exempt financial services work boils down to sophisticated analysis and targeted advice and marketing:

> Employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of

different financial products; and marketing, servicing or promoting the employer's financial products.

29 C.F.R. § 541.203(b).

This illustration is perfectly consistent with the rule that exempt administrative work is about running a business, not implementing its day-to-day operations. *See Bratt,* 912 F.2d at 1070. All businesses and individuals need financing for major purchases. By implication, they need analysis of their particular needs and advice on the best products or services to meet those needs. Although the advice received will reflect individual circumstances, the need for that advice is independent of those goals. *Cf. id.* (explaining that, under pre–2004 guidance, "[a]dvice on matters that involve policy determinations" refers to "how a business should be run").

Plaintiffs did not perform the sort of high-level analysis and counseling that constitutes exempt administrative work in the financial services industry. Plaintiffs did not determine which products best met clients' needs, advise clients on the merits of particular products, or market different products to clients. Their duties—validating information and ensuring compliance—were merely the final step in Defendants' day-to-day business of selling mortgages. Dkt. # 124, Ex. 2 at 5878; *Id.* Ex. 3 at 2.

Defendants' attempt to analogize Plaintiffs to insurance claim adjusters fails. Dkt. # 129 at 14. In *Farmers,* the Ninth Circuit held that a class of claim adjusters fell under the administrative exemption. 481 F.3d at 1124. But in *Farmers,* the claim adjusters' duties "track[ed] word for word the language" in applicable Administrator guidance. *Id.* at 1129; 29 C.F.R. § 541.203(a). As discussed above, that is the not case here. The applicable Administrator guidance is that which concerns financial services industry employees, and

the tasks described in that guidance do not match Plaintiffs' duties.

Defendants try to link Plaintiffs' duties to the appropriate Administrator guidance by arguing Plaintiffs' work involved "collecting and analyzing information regarding the customer's income, assets, investments or debts." 29 C.F.R. § 541.203(b); Dkt. # 129 at 15. This argument is unavailing. Plaintiffs collected and analyzed data in only the most mechanical sense. Detailed guidelines told Plaintiffs what information to verify. Defendants' assessment of customers' finances had to match the calculations of Defendants' investors. Dkt. # 124, Ex. 3 at 2; Dkt. # 133, Ex. 10 at 50. Plaintiffs' decision to deviate from the automated system's recommendations either had to be approved by another officer or meet the guidelines for a different product. Dkt. # 124, Ex. 3 at 2; Dkt. # 133, Ex. 10 at 56–57, 74. In sum, Plaintiffs' work was, as one of Defendants' officers put it, "functional rather than conceptual." Dkt. # 124, 2 Ex. 2 at 5878.

Defendants' argument that Plaintiffs' work was administrative because it was "of substantial importance" to Defendants is also unavailing. Dkt. # 129 at 15. Defendants cite *Farmers* for this proposition, but *Farmers* relied on guidance the Administrator has since changed. *See Farmers,* 481 F.3d at 1131; 29 C.F.R. § 541.205(a) (2004). In 2004, the Administrator deleted the phrase "substantial importance" from guidance discussing the administrative exemption's duty prong and limited the concept to the discretion prong: "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). The extent of Plaintiffs' discretion and whether it concerned "matters of significance" is not before the Court on the current motions.

Moreover, even if the importance of a function is relevant to the duties prong, Plaintiffs' duties were not important in the sense that would trigger the administrative exemption. Under the now-rescinded guidance, the importance of work could matter if it affected "management or operation of the business of [the] employer or [the] employer's customers." 29 C.F.R. § 541.205(a) (2004). Thus, "importance" is merely another example that can illustrate whether employees help run a business. Defendants seem to argue Plaintiffs' work was important because it was necessary to bring Defendants' mortgage products to the marketplace. This view would practically make every worker's duties administrative. It cannot be reconciled with the duty to construe FLSA exemptions narrowly. *See Bothell*, 299 F.3d at 1124–25.

## B. "Good faith reliance" defense

Both parties seek summary judgment with respect to Defendants' affirmative defense relying on § 259 of the Portal–to–Portal Act. Dkt. # 124 at 25; Dkt. # 137 at 8. Section 259 is an absolute defense to liability for wrongly exempting employees from overtime. To invoke it, Defendants must prove their misclassification of Plaintiffs "was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the [Administrator], or any administrative practice or enforcement policy of [the Administrator] with respect to the class of employers to which [Defendants] belonged." 29 U.S.C. § 259(a).

Although Plaintiffs attack Defendants' § 259 defense generally, their arguments are relevant mostly to § 259's conformity element. The Court finds that Defendants cannot establish this element as a matter of law. To the extent the parties have specifically addressed other § 259 elements, the Court need not consider their arguments. *See* Dkt. # 137 at 16, 18–19; Dkt. # 142 at 15–21.

### 1. *Conformity with Administrator guidance*

Plaintiffs argue that the § 259 defense requires Administrator guidance that "specifically addresses [the employer's] circumstances." Dkt. # 124 at 19. The Court agrees. Section 259 requires "actual conformity" with Administrator guidance. 29 C.F.R. § 790.14(a). An employer cannot act in conformity with Administrator guidance where the guidance does not clearly apply to the employer's circumstances. The Administrator has illustrated the strict meaning of "actual conformity" with this example:

> [A]n employer receives a letter from the Administrator of the Wage and Hour Division, stating that if certain specified circumstances and facts regarding the work performed by the employer's employees exist, the employees are, in his opinion, exempt from provisions of the Fair Labor Standards Act. One of these hypothetical circumstances upon which the opinion was based does not exist regarding these employees, but the employer, erroneously assuming that this circumstance is irrelevant, relies upon the Administrator's ruling and fails to compensate the employees in accordance with the act. Since he did not act "in conformity" with that opinion, he has no defense under [§ 259].

29 C.F.R. § 790.14(b).

Consistent with the Administrator's guidance, the Court has held that § 259 requires an employer to show "that the [Administrator guidance] on which it relied provided a clear answer to its particular situation." *Horan v. King Cnty., Wash., Div. of Emergency Med. Servs.*, 740 F.Supp. 1471, 1481 (W.D.Wa.1990). Nearly every other court to consider the question has ruled the same way. *See, e.g., Hultgren v. Cnty. of Lancaster*, 913 F.2d 498, 507–08 (8th Cir.1990); *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 927

(11th Cir.1987); *EEOC v. Home Ins. Co.,* 672 F.2d 252, 265 (2d Cir.1982); *EEOC v. Baltimore & Oh. R.R. Co.,* 632 F.2d 1107, 1112 (4th Cir.1980); *Schneider v. City of Springfield,* 102 F.Supp.2d 827, 833 (S.D.Ohio 1999); *Burnison v. Memorial Hosp., Inc.,* 820 F.Supp. 549, 558 (D.Kan. 1993).

The Court notes that it disagrees with Plaintiffs' argument that a Ninth Circuit case, *Frank v. McQuigg,* 950 F.2d 590 (9th Cir.1991), adopted a similar specificity requirement. *Frank* dealt with whether an employer had satisfied § 259's good faith element. *See* 950 F.2d at 598. There, all parties agreed that the employer had acted in conformity with Administrator guidance, and thus the Ninth Circuit did not analyze the conformity element. *Id.* Nonetheless, the Court is not concerned by the Ninth Circuit's silence on what conformity means for § 259 purposes. There is overwhelming precedent supporting Plaintiffs' position.

For their part, Defendants argue § 259 merely asks "how a 'reasonably prudent [person] would have acted under the same or similar circumstances' and requires 'that the employer have honesty of intention and no knowledge of circumstances which ought to put him upon inquiry.' " Dkt. # 129 at 16 (quoting *Alvarez v. IBP, Inc.,* 339 F.3d 894, 908 (9th Cir.2003)). This argument misses the point because it describes § 259's standard for good faith, not conformity. *See* 29 C.F.R. § 790.15(a); *Alvarez,* 339 F.3d at 908; *Frank,* 950 F.2d at 598. The good faith element is distinct from the conformity element, and it is possible to satisfy the former but not the latter. *See* 29 C.F.R. § 790.14(a).

Defendants cite only one published decision that suggests plausibility is the exclusive standard for a § 259 defense. *See* Dkt. # 129 at 16; Dkt. # 137 at 14. In *Marshall v. Baptist Hospital, Inc.,* 668 F.2d 234 (6th Cir.1981), the Sixth Circuit

stated that "courts should be hesitant to impose retroactive minimum wage liability on employers in the face of an administrative interpretation which the employer could plausibly interpret as insulating him from liability." *Id.* at 238. This facially broad language was not meant to apply to every element of a § 259 defense. In *Marshall,* the employer could have relied on two conflicting regulations, one of which was highly general and one of which "precisely" described its circumstances. *Id.* at 237. The Sixth Circuit held that, in view of the ambiguity created by the existence of two regulations, the employer acted in good faith when it relied on the one specifically tailored to its situation. *Id.* at 238. *Marshall* did not consider the parameters of § 259's conformity requirement, and at least one district court in the Sixth Circuit has held *Marshall* is consistent with the general rule that conformity requires "an administrative opinion that addresses the employer's specific circumstances." *Schneider,* 102 F.Supp.2d at 833. A few cases have arrived at the opposite reading of *Marshall,* but the Court finds these cursory, unpublished decisions to be unpersuasive. *See Kuebel v. Black & Decker, Inc.,* 2009 WL 1401694, at *11 (W.D.N.Y. May 18, 2009); *Henry v. Quicken Loans, Inc.,* 2009 WL 3199788, at *13 (E.D.Mich. Sept. 30, 2009).

■ Thus, in order to establish § 259's conformity element, Defendants must be able to show "that the [Administrator guidance] on which [they] relied provided a clear answer to [their] particular situation." *Horan,* 740 F.Supp. at 1481. The Court now turns to whether the legal authorities on which Defendants relied met that standard.

2. *Opinion letter concerning loan officers*

■ The Morgan Lewis and Goodman audits both consulted a 2006 Administrator

opinion letter stating that mortgage loan officers should be considered exempt. Dkt. # 133, Ex. 6 at 82; *Id.* Ex. 7 at 31–32; *Id.* Ex. 9 at 14–15, 23–24. Defendants and the auditors felt this letter supported Defendants' decision to classify Plaintiffs as exempt. In their view, the duties of the mortgage loan officers described in the opinion letter overlapped in part with Plaintiffs' duties as underwriters. Dkt. # 133, Ex. 6 at 107; *Id.* Ex. 7 at 33–36; *Id.* Ex. 9 at 24; Dkt. # 137 at 11.

This partial overlap in duties does not meet § 259's requirement of "a clear answer" to whether Administrator guidance applies. *Horan,* 740 F.Supp. at 1481. The job duties of loan officers highlighted in the 2006 opinion letter differed significantly from Plaintiffs' duties. The mortgage loan officers discussed in the opinion letter "collect[ed] and analyze[d] the customer's financial information and assess[ed] the customer's financial circumstances to determine whether the customer and property qualif[ied] for a particular loan"; "collect[ed] and respond[ed] to and follow[ed] up on customer inquiries"; "advise[d] the customer about the risks and benefits of the loan alternatives, including the options and variables involved"; "stay[ed] up-to-date on changes in market conditions"; were "responsible for recommending the best products for the customer"; and engaged in "marketing, servicing, or promoting the employer's financial products." Dkt. # 125, Ex. K 2.

Defendants had employees who performed these duties. They were called loan officers. *See* Dkt. # 124, Ex. 2 at 5878. Plaintiffs, by contrast, had essentially none of these responsibilities as underwriters. Of all the duties listed in the opinion letter, only the first seems to describe some of Plaintiffs' duties. In a broad sense, Plaintiffs "collected and analyzed" financial information to "determine whether the customer . . . qualif[ied]" for a

mortgage. Dkt. # 125, Ex. K 2. But as discussed above, Plaintiffs did so only as part of a verification process for a decision already made by loan officers and an automated review system. Defendants' mortgage loan officers performed the advisory, customer relations, and marketing work described in the opinion letter. Indeed, those officers had the same job title as the employees discussed in the opinion letter. In short, Defendants did not act in conformity with the opinion letter by concluding underwriters with very different duties were exempt.

### 3. *Administrator guidance and regulations*

The Morgan Lewis and Goodman audits also relied on various regulations and guidance published by the Administrator. Dkt. # 129, Ex. 7 at 30–31; Dkt. # 133, Ex. 9 at 21–22. The Court need not address most of these authorities in detail. Most of them, Plaintiffs argue, are too general or plainly distinguishable from Defendants' situation to satisfy § 259's conformity requirement. Dkt. # 124 at 22–23. The Court finds this argument obviously correct, and Defendants make almost no effort to rebut it. *See* 29 C.F.R. §§ 541.200, 541.703(b)(7), 541.704; Dkt. # 129 at 22–23; Dkt. # 137 at 15–17. Plaintiffs' burden on summary judgment is satisfied with respect to these particular authorities. *See Celotex,* 477 U.S. at 322–24, 106 S.Ct. 2548.

■ Defendants do invest substantial effort defending their reliance on the Administrator's illustration of exempt administrative work in the financial services industry. *See* Dkt. # 29 at 15, 22; Dkt. # 137 at 11, 17. Defendants' exemption decision was not "in conformity" with this guidance either.

The guidance on employees in the financial services industry states:

Employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products.

29 C.F.R. § 541.203(b).

Like the 2006 opinion letter, the focus of this guidance is high-level analysis, advice, and marketing. As discussed above, Plaintiffs did virtually none of these things. They did not advise customers, select products that best met customers' needs, or market Defendants' products. They analyzed information only in the mechanical sense of matching it with items on a detailed checklist.

Defendants contend that *Whalen*—the district court decision that held underwriters performed exempt administrative work—"demonstrates that, as a matter of law, it was subjectively and objectively reasonable ... to rely on 29 C.F.R. § 541.203(b)" in classifying Plaintiffs as exempt. Dkt. # 144 at 4. This argument fails. Defendants concede that "case law cannot form the basis of the [§ 259] defense." *Id.* Section 259 requires conformity with a "written administrative regulation, order, ruling, approval, or interpretation" of the Administrator, not a judicial decision. 29 U.S.C. § 259. Case law is relevant to the question of conformity only if it persuasively shows how the Administrator has given specific guidance on an employer's situation.

*Whalen* is not as persuasive as Defendants claim. *Whalen* fixated on how underwriters collect and analyze customer information, decide whether applications met guidelines, and authorize variances from those guidelines. *See* 569 F.Supp.2d at 331. But as discussed above, these duties do not conform to Administrator guidance, which focuses on high-level individualized analysis, advising clients, and selecting products that meet clients' needs. *See* 29 C.F.R. § 541.203(b). *Whalen,* therefore, does not show that Defendants can satisfy § 259's conformity element.

## C. Retroactivity

Defendants argue it would be unfairly retroactive to hold Defendants liable under either the FLSA or WMWA. *See* Docket # 37 at 19–20. With respect to the FLSA, Defendants contend their reliance on Administrator guidance was reasonable until November 2009, when the Second Circuit reversed *Whalen* in *Davis. Id.* at 19. With respect to the WMWA, Defendants argue that state law mirrors changes in FLSA interpretations but will not enforce any changing guidance prospectively. *Id.* at 20; *Palazzolo–Robinson v. Sharis Mgmt. Corp.,* 68 F.Supp.2d 1186, 1189 n. 3 (W.D.Wash.1999); *Tesoro Ref. & Mktg. Co. v. Dep't of Revenue,* 164 Wash.2d 310, 323, 190 P.3d 28 (Wash.2008). Since the Administrator has rescinded the 2006 opinion letter on mortgage loan officers, Defendants argue, it would be unfair to apply a new interpretation of the administrative exemption under the WMWA. Dkt. # 137 at 12–13.

The Court's analysis of Defendants' § 259 defense renders this argument moot. As discussed above, neither the 2006 opinion letter nor the Administrator guidance on financial services industry employees ever applied to mortgage underwriters like Plaintiffs. Thus, neither *Davis* nor the rescission of the 2006 opinion letter moved the goalposts for Defendants.

## V. LIMITATIONS ON LIABILITY

### A. Liquidated damages

██ Defendants seek summary judgment precluding the award of liquidated damages to Plaintiffs. The FLSA provides that employers who violate the FLSA's overtime requirements "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b), *ruled unconstitutional on other grounds by Alden v. Maine,* 527 U.S. 706, 712, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). Defendants contend they are entitled as a matter of law to the limited good faith defense available under § 260 of the Portal–to–Portal Act. Under § 260, "if the employer shows to the satisfaction of the court that the act or omission giving rise to [an overtime pay action] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in [§ 216(b) ]." 29 U.S.C. § 260. A § 260 defense is available even where an employer does not have a complete defense to liability under § 259. *Nelson v. Ala. Inst. for Deaf & Blind,* 896 F.Supp. 1108, 1115 (N.D.Ala.1995).

It would be premature to foreclose liquidated damages at this stage. Even if Defendants can establish the elements of a § 260 defense, the plain language of the Portal–to–Portal Act leaves the decision to deny or reduce liquidated damages in the Court's discretion. *See* 29 U.S.C. § 216(b); *Local 246 Util. Workers Union of Am. v. S. Cal. Edison Co.,* 83 F.3d 292, 298 (9th Cir.1996). The Court will wait for adjudication on the merits before deciding whether to exercise that discretion.

### B. Statute of limitations

The final issue to address is the FLSA's statute of limitations. The standard statute of limitations for FLSA overtime claims is two years. 29 U.S.C. § 255(a). If, however, Plaintiffs show a willful violation, the statute of limitations extends to three years. *Id.* Defendants argue there is no evidence on which a jury could find willfulness. Dkt. No. 137 at 23.

██ The Court disagrees. Willfulness requires knowledge or reckless disregard of a FLSA violation. *Alvarez,* 339 F.3d at 909. On the one hand, Defendants consulted counsel to determine their obligations. *See Serv. Emps. Int'l Union, Local 102 v. Cnty. of San Diego,* 60 F.3d 1346, 1355 (9th Cir.1994); Dkt. # 124, Ex. 9; Dkt. # 125 Ex. P 12–13. On the other hand, there is evidence Defendants were seriously concerned about the lawfulness of classifying Plaintiffs as exempt. *See Chao v. A–One Med. Servs., Inc.,* 346 F.3d 908, 918–19 (9th Cir.2003). Internal emails show the exemption decision provoked ongoing debate and concern, especially since Defendants' officers knew that competitors considered underwriters to be non-exempt. Dkt. # 143, Ex. S 4075, 4077. Viewing the evidence in the light most favorable to Plaintiffs, a jury could conclude that Defendants knowingly or recklessly classified Plaintiffs as administrative employees. The Court cannot find as a matter of law that the normal two-year statute of limitations applies.

## VI. CONCLUSION

Having reviewed the relevant briefs, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Plaintiffs' motion for partial summary judgment (Dkt. # 125) is GRANTED.

(2) Defendants' motion for partial summary judgment (Dkt. # 137) is DENIED.

(3) The parties' requests for oral argument are DENIED as moot.

(4) The Clerk is directed to forward a copy of this Order to all counsel of record.